NOTE. As to effect of subsequently filling blanks in conveyances: See Simms v. Hervey, 19 Iowa. 274. and cases cited and classified; Owen v. Perry, 25 Iowa, 412. As to controverting certificate of acknowledgment; O'Ferrall v. Simplot, 4 Iowa, 381; McHenry v. Day, 13 Iowa. 445; Morris v. Sargent, 18 Iowa, 90; Dodge v. Hollingshead. 6 Minn. 25 [Gil. 1], followed in Edgerton v. Jones. 10 Minn. 427 [Gil. 341], also hold with Judge Nelson, that under the statute of Minnesota the facts stated in the certificate of acknowledgment are not conclusive.

DRYER (McFEELY v.). See Case No. 8.791.
DRY OX AND COW HIDES (UNITED STATES v.). See Case No. 14,965.

## Case No. 4,097.
### DRYSDALE v. The RANGER et al.
[Bee. 148.]¹

District Court, D. South Carolina. Sept., 1799.

SEAMEN'S WAGES—FORFEITURE.

Wages not always forfeited by disobedience of a captain's orders. unattended by aggravating circumstances.

[Cited in The Mentor. Case No. 9,427; The Maria. Id. 9.074: Smith v. Treat. Id. 13,117;

---

¹ [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission.]
² [Affirmed in Drury v. Foster, 2 Wall. (69 U S.) 24.]

¹ [Reported by Hon. Thomas Bee, District Judge.]

The Cornelia Amsden, Id. 3,234; The Antioch, 11 Fed. 166.]

Before BEE, District Judge.

The only question in this case is, whether the actor has forfeited his wages, as mate of the Ranger, by misbehaviour on board. The articles are in the usual form. The logbook has been produced, and a number of witnesses examined to shew that Drysdale, on the 4th of August last, behaved to Captain Booth in so improper a manner as to work a forfeiture of the wages he now sues for. It appeared from this evidence that Drysdale was first mate, and had the watch on deck. That a short time before his watch expired, the captain came on deck, and gave some order to the man at the helm, which the mate contradicted; asserting that the watch was his, and that he had the direction of the vessel. A dispute soon after arose as to the hour of the day, respecting which there was a difference of three minutes. This trifling circumstance led to all the subsequent consequences. Drysdale went so far as to call the captain a fool; and said he knew his own duty. The captain complained of this as being insolent, and ordered the mate to go below. He refused to obey till the time of his watch on deck should expire. Captain Booth then struck him, and ordered the second mate to tie him; which, however, was not done. He was struck again, and then went below, making no further resistance, but calling on the carpenter and gunner to stop the captain from beating him, for that the captain was mad. It was contended on the part of the claimant that, by the articles, these wages are forfeit. And 2dly, that exclusively of any contract in writing, an obligation is imposed on seamen to obey orders; and that their refusal to do so causes a forfeiture of wages.

The articles stipulate that the seamen shall not, on any account, leave or desert the vessel, till the voyage be ended and the vessel discharged. The act of congress has a similar provision. The articles also stipulate that the crew shall do their duty as becomes good and faithful seamen. But neither the contract nor the act says that disobedience of orders shall work a forfeiture of wages.

We must recur, therefore, to the marine law. The Laws of Oleron declare, "that if a mariner commit a fault and do not submit, the master may, at the next place of landing, discharge him; and, if he refuse to go on shore, he shall lose half his wages, and all his goods in the vessel. But if the mariner submit, and the master will not receive his submission, he shall have his whole wages." By the same laws, if a mariner commit a wilful or negligent fault, to the damage of ship or goods, the mariner shall be liable. In all cases of barratry, a partial or total forfeiture of wages, as the case may be, is the constant practice of the court. The case reported in Lex Mercatoria from 15 Vin. Abr. 234, is, that if a mariner, who has been rebellious, repent in time, and offer amends, he may, in case the master refuse, follow the ship and obtain his hire. It is clear, therefore, that disobedience is not necessarily attended by forfeiture of wages. Let us, then, examine the particular circumstances upon which the court is now to decide.

The cause of dispute was, at first, trifling, and the behaviour of the mate highly improper. It was his duty to yield implicit and ready submission to the captain's orders; by not doing so, he subjected himself to confinement and correction. He did, indeed, receive two blows, to which he made no resistance; and the captain would have been justified in further moderately punishing him. He chose rather to send him out of the ship, and refused to take him back; and he seems to have considered this as punishment enough, for he afterwards promised, in presence of the captain of the Penelope, to pay the mate his wages upon their arrival in Charleston. Whatever were his motives for not receiving Drysdale again into his vessel, I am willing to suppose them proper; but he ought certainly to make good his promise as to the wages, especially as the mate had ample revenge in his power, if he had chosen to give information to the British frigate of the tearing out of some of the leaves of the logbook. This he refused to do; and this, added to the proof before the court of his contrition, certainly extenuates his offence.

It appeared also, that no other instance of this sort had occurred throughout the voyage: and I am unwilling to construe the articles so strictly as to decree a forfeiture for this single fault. The circumstances were not so aggravated as they frequently are on this rough and dangerous element. If, indeed, resistance had been made, and this man's hand lifted against his captain, I should have decreed a forfeiture of wages without hesitation. As the seaman's life is a hard one, and as the actor did his duty faithfully for a long time, with this only exception, I shall order and adjudge that his wages be paid. But as the motive of the claimant in withholding them was a due regard to discipline, and his duty to his owners, I decree that each party pay his own costs.